IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PRINCE L. SPELLMAN,<br><br>Defendant. | 8:21-CR-136<br><br>ORDER REGARDING DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION AND DEFENDANT'S MOTION FOR SUPPLEMENTAL HEARING |

    This matter is before the Court for its review of the magistrate judge's Findings and Recommendation, Filing 61, denying Defendant's Motion to Suppress, Filing 26. Defendant timely filed an Objection to the Findings and Recommendation, challenging the magistrate judge's ruling. Filing 62. Defendant also filed a Motion for Supplemental Hearing, Filing 63, on his Motion to Suppress. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a de novo review of the magistrate judge's Findings and Recommendation. The Court concurs in the magistrate judge's factual findings and legal analysis. The Court also finds Defendant has not shown good cause to justify a supplemental hearing on his motion, as required by NECrimR 59.2(b)(2).

## I. BACKGROUND

    The defendant, Prince L. Spellman, is accused of possessing with intent to distribute a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1) & (b)(1), of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). All of the charges stem from a March 9, 2021 traffic stop. Filing 60 at 132. Defendant was the driver of a vehicle that was suspected of being involved in a shots-fired call the night prior. Filing 60 at 68. Because police

1

suspected weapons were involved, they ordered Defendant and the other occupants of the vehicle out at gun point when it was stopped. Filing 60 at 68. Police then observed a weapon in plain view on the floor, behind the driver's seat. Filing 60 at 86, 105; Ex. 2 (Brant body camera footage). Police searched Defendant and found controlled substances in his possession. Filing 60 at 138.

The night prior to the traffic stop, March 8, 2021, police responded to a shots-fired call in the area of the 2800 block of Fort Street in Omaha, after a ShotSpotter system in the area indicated possible gunfire. Filing 60 at 21-22. 911 operators received multiple calls related to a shooting in the area, and multiple slightly varying descriptions of a suspect vehicle were relayed to officers on scene. Filing 60 at 22, 25, 47; Ex. 101; Ex. 102 (police dispatch recordings). Initial reports were that the vehicle was a silver Mercury Mountaineer; officers were also told the vehicle was a sport utility vehicle (SUV), was two-toned, and may have been a Jeep or and Envoy. Filing 60 at 25, 47.

Officer Rengo was among the officers who responded to the shots-fired call. Filing 60 at 21-22. Soon after arriving in the area, he observed a silver SUV, which turned out to be a 2017 Jeep Cherokee. Filing 60 at 26, 29; Ex. 104 (NCJIS report). Rengo then followed the Jeep and ran its license plate number, WRF761, through the Nebraska Criminal Justice Information System (NCJIS) database at around 7:08 p.m. Filing 60 at 26-29; Ex. 104. The Jeep was registered to a Lisa Gunter. Filing 60 at 29. Rengo testified that he did not stop vehicle because he did not observe any abnormal driving behavior, it would be unusual for a shooter to have remained in the area, and the suspect vehicle was still being described as a Mountaineer as far as Rengo knew. Filing 60 at 28-30, 44, 47. Rengo then ceased following the Jeep and responded to a different nearby shots-fired call, finding nothing of significance. Filing 60 at 30.

Rengo then received updated information from Sergeant Kyler, which had been provided by witnesses of the Fort Street shooting. Filing 60 at 33. Kyler relayed that witnesses had reported

the suspect vehicle was a newer model Jeep with a partial license plate of "WRX." Filing 60 at 31, 57. Rengo replied over the radio that he had run license plate of WRF761 on a silver Jeep Cherokee, but that he was no longer following the vehicle. Ex. 102. Witnesses also reported seeing a black man exit the Jeep, fire approximately five gunshots in the air, and then drive away. Filing 60 at 31. Rengo testified that based on this new information, he believed the Jeep he had followed earlier was likely the suspect vehicle from the shooting. Filing 60 at 31-32.

Rengo then returned to the area of the initial shooting and spoke with the sergeant and three witnesses. Filing 60 at 33. The witnesses confidently identified the suspect vehicle as a silver Jeep Cherokee and again provided the partial "WRX" plate number. Filing 60 at 35; Ex. 103 (Rengo's body camera footage). Rengo verified the type of Jeep the witnesses saw using pictures of Jeeps he accessed on his phone. Ex. 103. Rengo testified that if he had the information provided by the witnesses when following the Jeep earlier that evening, he would have stopped it. Filing 60 at 35.

Detective Martinez was on duty on March 8, but he did not respond to the ShotSpotter call. Filing 60 at 63-64. He testified that he was listening to radio traffic related to the call, however. Filing 60 at 63. On March 9, 2021, while on patrol in an unmarked vehicle, Martinez observed and began to follow a silver Jeep Cherokee; he testified that the Jeep's license plate number, WRF761, matched that he had remembered from the previous night's radio traffic. Filing 60 at 67, 76. Martinez then radioed dispatch to secure assistance from marked units to conduct a traffic stop. Filing 60 at 68. Martinez's testimony establishes that he observed the Jeep commit a minor traffic infraction after he had already sought assistance with the traffic stop. Filing 60 at 69, 133; Ex. 106; Ex. 107.

When marked units arrived, Martinez fell back and allowed them to make the stop in a McDonald's parking lot. Filing 60 at 69-70. Officers conducted a felony stop because of the

potential for a firearm, ordering the three occupants of the Jeep to exit the vehicle one at a time and walk backwards towards officers. Filing 60 at 68-70; Ex. 1. Martinez testified that he observed the driver and two passengers and noted one of the passengers had marijuana crumbs on him. Filing 60 at 72-73. Police found a gun on the rear floor of the Jeep behind the driver's seat and marijuana in the vehicle. Filing 60 at 86, 73, 135, 104, 108, 111; Ex. 1; Ex. 2. A search of Defendant, who was driving the vehicle, revealed he was also in possession of narcotics. Filing 60 at 137-38.

Defendant has moved "to suppress the physical evidence seized as a result of an illegal and unconstitutional traffic stop and search of the defendant's person and his vehicle," and "any and all inculpatory statements by the defendant which resulted from said traffic stop and subsequent detention." Filing 26. The magistrate judge has recommended the Court deny Defendant's motion, finding officers had the requisite reasonable suspicion to justify the traffic stop and had probable cause to search the vehicle. Filing 61 at 7-10. Defendant has specified four objections to the magistrate judge's Findings and Recommendation, Filing 62 at 1, and has moved for a supplemental hearing pursuant to NECrimR 59.2(b)(2), asserting he "anticipates" he will find evidence that "will be exculpatory in nature and will support his charge of an unconstitutional search and seizure," Filing 64 at 1. The Court will now address the objections and the motion for a supplemental hearing.

## II. DISCUSSION

Defendant makes four objections to the Magistrate Judge's Findings and Recommendations:

> 1. Spellman objects that the government's evidence demonstrated reasonable suspicion to justify an investigative stop of the subject vehicle.

    2. Spellman objects to the Court's finding that Officer Rengo ran the plates in the sequence of events articulated in the Findings and Recommendations.

    3. Spellman objects on the grounds that the record is incomplete. Spellman prays for leave to file an amended motion to suppress and requests a supplemental hearing per Neb. Crim. R. 59.2 (b)(2) after acquisition and review of presently undisclosed evidence.

    4. Spellman objects to the recommendation that the Motion to Suppress be denied.

Filing 62 at 1. The Court will address each objection in turn. Because the substance of Defendant's third objection and his separate motion for a supplemental hearing are the same, the Court will address them together.

### A. Reasonable Suspicion to Justify the Stop

Defendant objects to the magistrate judge's finding that "there was reasonable suspicion for the traffic stop because officers had reliable information that the Jeep was involved in a shots-fired incident." Filing 62 at 2 (quoting Filing 61 at 7). Defendant relies heavily on the fact that there were early and inconsistent reports of the grey/silver SUV's make, model, and precise paint scheme. Filing 62 at 3. Defendant also points out the partial license plate number provided by witnesses was "WRX," while the license plate on the vehicle Defendant was stopped in was "WRF761," and relies in part on testimony from Officer Rengo that he lacked enough information to pull the Jeep over on the night of the shooting. Filing 62 at 3-5. In her findings however, the magistrate judge determined there was reasonable suspicion of the Jeep after Officer Rengo had a more clear and consistent description of the suspect vehicle and a partial license plate number. Filing 61 at 7-8. This Court agrees with the magistrate judge; there was reasonable suspicion.

Investigative stops of vehicles are constitutionally permissible when officers "have a reasonable suspicion the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007). Courts "consider the totality of the circumstances in

determining whether the facts known to the officer amount to an objective and particularized basis for reasonably suspecting criminal activity." *United States v. LaGrange*, 981 F.3d 1119, 1121 (8th Cir. 2020) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)). "An officer is entitled to draw specific reasonable inferences from the facts in light of his experience." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Further, "an officer may rely on information provided by other officers and all the information known to a team of officers involved in the investigation." *United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir. 2003).

  Detective Martinez, who initiated the traffic stop on the March 9, testified that he had been listening to the radio traffic concerning the prior night's shots-fired incident. He heard Rengo's call and remembered the license plate the next day. Approximately twenty-four hours after the shots-fired incident, Martinez saw a silver Jeep Cherokee with the same license plate, and Martinez believed the vehicle was involved in the incident the night prior. That suspicion was entirely reasonable and based on particularized facts known to officers, as the magistrate judge concluded. Martinez was justified in relying on the information relayed to him over the radio the night prior, and in turn, the officers he directed to make the traffic stop did so based upon a reasonable suspicion the vehicle was involved in criminal activity. Defendant's objection is overruled.

### B. Sequence of Events

  Next, Defendant objects to the "finding that Officer Rengo ran the plates in the sequence of events articulated in the Findings and Recommendations." Filing 62 at 6. Defendant asserts that officers gave false testimony at the hearing on the motion to suppress and asserts his belief "that the false testimony is a result of the OPD's failure to disclose all relevant evidence." Filing 62 at 6. Defendant does not specify what evidence was withheld, though elsewhere in his filings he asserts an alleged wiretap investigation of another person seemingly not involved in this case is

6

relevant. *See* Filing 62 at 10-12. He further asserts the timing of certain radio traffic and actions taken by officers is incongruent, but candidly notes that his timing is based on counsel's calculations derived from time-metered recordings that are likely not synchronized, and the calculations may be flawed. Filing 62 at 6-8. Primarily, he asserts Officer Rengo's "testimony that he first ran the plate [of the suspect Jeep he followed] and then went to investigate the Miller Park Incident," is false. Filing 62 at 7. Having conducted its de novo review, the Court finds nothing in the record that causes it to doubt the magistrate judge's determination that Rengo's testimony was credible.

As an initial matter, the Court assigns little weight the counsel's calculations of the precise times at which certain events occurred, which are based on recordings the same counsel argues may lack synchronization. Counsel's guess at the timeline is less convincing to the Court than the memories of the witnesses who lived the events of that evening, testified under oath at the hearing before the magistrate judge, and were subject to counsel's cross-examination. Rengo and Martinez were subject to extensive cross-examination; there was ample opportunity to address any perceived inconsistencies in their testimony, but any attempt to do so was unconvincing. Further, the precise sequence of events Defendant takes issue with, that Rengo followed the Jeep, ran its license plate at 7:08:54 p.m. and then responded to a different shots-fired call in the Miller Park area, is supported by the evidence, even assuming counsel's timing is correct. Rengo testified he investigated the Miller Park shots-fired call after running the Jeep's license plate. Filing 60 at 29-30. He did not, however, testify that he stopped following the Jeep and proceeded to the location of the Miller Park incident immediately on hearing the shots-fired call. *See generally* Filing 60. He could easily have heard the call for the first time at counsel's estimated time of 7:05 p.m. and responded that he was in the area of Miller Park but not broken off from following the Jeep until,

7

four minutes later, when the license plate was run at 7:08:54. *See* Filing 62 at 7-8 (defense's time estimates based on recordings and the NCJIS report). Or, counsel's calculations could be incorrect, as Defendant's brief concedes. Filing 62 at 7. Rengo's testimony was consistent with the evidence and credible. This objection is overruled.

### C. Supplemental Hearing and New Evidence

Defendant's third specified objection is substantively the same as his contemporaneously filed motion seeking a supplemental hearing regarding suppression of the evidence gathered as a result of the traffic stop. *See* Filing 62 at 10-12; Filing 63; Filing 64. Defendant asserts he intends to seek "wiretap recordings [from an investigation of someone else] which mention him, his nickname, or a Jeep Cherokee with license plate number WRF761," which he argues is the reason police sought to pull him over. Filing 62 at 11. He further asserts, based on undetailed allegations of information he "learned from associates" regarding a wiretap of someone else, that officers "fabricated the story about following a silver Jeep and getting the license plate." Filing 64 at 1; Filing 62 at 11. The Court is wholly unconvinced by Defendant's unfounded conspiracy theories.

The officers involved testified credibly as to what happened on March 8 and 9, 2021, leading to Defendant being stopped. They were subject to thorough cross-examination by the defense. Rengo specifically testified that he ran the plate on the Jeep he was following, and there is documentary evidence corroborating his testimony. *See* Ex. 104. Defendant may be "of the opinion that Officer Rengo may not have personally run the license plate the night of March 8, 2021," Filing 64 at 2, but this Court is not. Even if the wiretap evidence Defendant asserts exists, with little to no basis for such an assertion, does in fact exist, it would not create doubt that officers had the reasonable suspicion that the vehicle was involved in criminal activity needed to conduct the traffic stop. Pursuant to NECrimR 59.2(b)(2), the Court may hold a supplemental hearing to

receive additional evidence if the requesting party "shows good cause." No good cause has been shown here. Defendant's unsupported assertions that officers conspired against him and that he was mentioned during a wiretap investigation of someone else does not demonstrate good cause. The objection is overruled, and the Motion for Supplemental Hearing is denied.

### D. Denial of the Motion to Suppress

Citing his other objections, Defendant generally objects to the magistrate judge's recommendation that his Motion to Suppress be denied. Filing 62 at 12. The Court has conducted a de novo review of the record in this matter, concerning both the objected-to and unobjected-to portions of the magistrate judge's order, and concurs fully in her assessment of the law and facts. This objection is overruled, and the Court adopts the magistrate judge's Findings and Recommendation in full. Accordingly,

IT IS ORDERED:

1. Defendant's Objection, Filing 62, is overruled;
2. The magistrate judge's Findings and Recommendation, Filing 61, is adopted;
3. Defendant's Motion to Suppress, Filing 26, is denied;
4. Defendant's Motion for Supplemental Hearing, Filing 63, is denied; and
5. The Clerk of Court is ordered to terminate the pending motions at Filing 26, Filing 61, Filing 62, Filing 63, and Filing 65.

Dated this 29th day of June, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge