IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>PRINCE L. SPELLMAN,<br><br>                    Defendant. | **8:21-CR-136**<br><br>**MEMORANDUM AND ORDER ON MOTION FOR A NEW TRIAL** |

## I.    INTRODUCTION

On September 30, 2022, the jury convicted Defendant Prince L. Spellman of possession with intent to distribute a mixture or substance containing an illegal substance; possession of a firearm during and in relation to, and in furtherance of, a drug trafficking crime; and of felon in possession of a firearm. Filing 153 (text minute entry); Filing 166. This matter is before the Court on Spellman's Motion for a New Trial. Filing 171. The Government opposes Spellman's Motion. Filing 178. For the reasons stated herein, the Court denies Spellman's Motion.

## II.    BACKGROUND

On March 8, 2021, police officers responded to calls about shots being fired around the 2800 block of Fort Street in Omaha, Nebraska. 911 operators received multiple calls related to the shooting with varying descriptions of a suspect vehicle. Officers at the scene observed a vehicle—a silver Jeep Cherokee—generally matching the description of the suspect vehicle and ran the plate number, which was WRF761. The search of the plate number revealed that the jeep belonged to Lisa Gunter of the 2800 block of North 30th Street. Officers decided not to stop the vehicle because the driving behavior was normal and because of the different descriptions they had received of the suspect vehicle.

After running the jeep's plate, law enforcement officers questioned three witnesses, who each confidently identified the suspect vehicle as a silver Jeep Cherokee and provided the partial license plate number "WRX." Officers verified the type of jeep the witnesses saw using pictures of jeeps on a phone.

The next day, Omaha Police Detective Ricardo Martinez, who had listened to the radio traffic of the shots-fired incident, was driving in an unmarked vehicle. He observed a silver Jeep Cherokee with the license plate number WRF761 and, based on what he remembered from the prior night's radio traffic, began to follow it. Detective Martinez radioed officers in marked police vehicles, who initiated a traffic stop of the Jeep Cherokee. Spellman, the driver, and two other occupants exited the jeep. A subsequent search uncovered narcotics on Spellman's person and in the jeep, as well as a pink firearm on the rear floor of the jeep behind the driver's seat.

On May 20, 2021, a grand jury returned a three-count Indictment against Spellman for drug-trafficking and firearm offenses. Filing 1. A few weeks later, Spellman retained counsel. Filing 14. Spellman then filed a Motion to Suppress on August 17, 2021. Filing 26. The Motion to Suppress requested that the Court suppress all physical evidence seized during the March 9, 2021, traffic stop. Filing 27 at 1–4. According to Spellman, officers pulled him over based on an unsubstantiated hunch that he or his vehicle was involved in the shots-fired incident on March 8, 2021. Filing 27 at 3. United States Magistrate Judge Susan M. Bazis held an evidentiary hearing on Spellman's Motion to Suppress and later recommended to the undersigned judge that it be denied. Filing 61. The undersigned judge adopted Magistrate Judge Bazis's Findings and Recommendation in its entirety, concluding that there was reasonable suspicion justifying the stop of Spellman's vehicle; rejecting Spellman's contention that officers gave false testimony at the

evidentiary hearing; and declining Spellman's request for a supplemental hearing to present new evidence about an alleged "wiretap." Filing 75 at 4–9.

On August 19, 2022, Spellman's counsel moved to withdraw as his attorney. Filing 79. During a hearing, Spellman indicated that he wanted to represent himself in this case. Filing 82 (audio file); Filing 84 (audio file). Magistrate Judge Bazis granted the request and allowed Spellman's counsel to withdraw. Filing 83 (text minute entry). The Court then held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), on September 12, 2022, to determine whether Spellman knowingly, intelligently, and voluntarily waived his right to counsel. Filing 89 (text minute entry). At the hearing, the Court inquired into Spellman's familiarity with the various rules governing criminal cases, warned him that he was taking a serious risk, and admonished that a seasoned attorney would likely represent him far better than he could represent himself. *See generally* Filing 90 at 1–2. After Spellman rejected the Court's offer to appoint a member of the Federal Public Defender's office to represent him, the Court entered an Order finding that Spellman knowingly, intelligently, and voluntarily waived his right to counsel and appointing a member of the Federal Public Defender's office to serve as standby counsel. Filing 90 at 1–2. Spellman, however, agreed to allow the Court to appoint stand-by counsel to assist him at trial. The Court made clear that stand-by counsel would not be allowed to make arguments or examine witnesses at trial given Spellman had decided to represent himself at trial, but that Spellman could privately consult with stand-by counsel before and during trial.[1]

This case proceeded to trial on the allegations contained in the three-count Second Superseding Indictment against Spellman. Filing 143 (text minute entry). On September 20, 2022, the day before trial, and throughout trial, Spellman filed several *ex parte* motions for subpoenas

---

[1] It was obvious that Spellman made extensive use of his standby-by counsel at trial.

requesting various documents and the appearance of a witness. *See, e.g.*, Filing 96 (requesting a subpoena for cell phone records for March 8th and 9th of 2021 from a phone company); Filing 125 (requesting a subpoena for an individual who would testify that Spellman was uninvolved in the shots-fired incident). Magistrate Judge Bazis granted several of these motions, Filing 103; Filing 124; Filing 127; Filing 144; however, the undersigned quashed others as improper during trial. Upon reviewing these documents, the Court discussed with Spellman out of the hearing of the jury that given the timing, the subpoenas would likely not be returned and no documents would be provided. The Court asked Spellman if he wished to proceed with trial even if he did not receive any additional documents, and Spellman stated he wished to proceed and did not want to seek a continuance. The Court also noted on the record that the majority (and potentially all) documents that Spellman sought with these late-filed subpoenas had already been provided to Spellman's previous counsel during discovery. Spellman acknowledged he had a jump drive device with discovery documents from his prior counsel.

At trial, Spellman sought to question several of the Government's witnesses about the March 8, 2021, shots-fired incident and posed inquiries about "certified" records of reports from the Government's experts. Many of Spellman's questions related to how officers identified the jeep during the shots-fired incident, which was one of the issues raised in his Motion to Suppress. Although the Court generously gave Spellman wide latitude when questioning witnesses, it sustained several relevancy objections by the Government to avoid needlessly relitigating the suppression issue and to focus on the issues relevant to determining Spellman's guilt or innocence for the charged offenses.

On September 29, 2022, the parties delivered closing statements and turned the case over to the jury for deliberation. Filing 151 (text minute entry). During their deliberations, the jury

posed several questions to the Court. In response to the jury's third question, which seemingly suggested that the jury had come to a standstill on Counts II and III regarding the term "knowingly," the Court instructed the jury about the term and read an *Allen* charge. Filing 161 at 1–2.

On September 30, 2022, the jury found Spellman guilty on all three counts in the Second Superseding Indictment. Filing 153 (text minute entry); Filing 166. Spellman filed his Motion for a New Trial on October 11, 2022, Filing 171, an addendum six days later, Filing 175, and a supplement to the addendum on October 17, 2022, Filing 177.

### III.   ANALYSIS

### A.  Motion for New Trial Standards

Federal Rule of Criminal Procedure 33 permits a defendant to move the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant a Rule 33 motion is within the sound discretion of the District Court . . . . though this broad discretion should be exercised sparingly and with caution." *United States v. Huyck*, 849 F.3d 432, 444 (8th Cir. 2017) (internal quotation marks and citations omitted). A district court abuses its discretion "if it fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors." *Id.* (quoting *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013)).

Motions for a new trial based on newly discovered evidence are disfavored. *See United States v. Glinn*, 965 F.3d 940, 942 (8th Cir. 2020). "To warrant a new trial based on previously unavailable evidence, [the movant] must demonstrate the following: '(1) the evidence is in fact newly discovered since trial; (2) diligence on his part [in identifying the evidence]; (3) the evidence

5

is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) it is probable that the new evidence would produce an acquittal at the new trial.'" *United States v. Erickson*, 999 F.3d 622, 631 (8th Cir. 2021) (second alteration in original) (quoting *United States v. Shumaker*, 866 F.3d 956, 961 (8th Cir. 2017)).

### B.   Motion for a New Trial

In his Motion for a New Trial, including the accompanying addendum and supplement, Spellman raises several arguments as to why he believes his trial violated his rights under the United States Constitution. In general, he asserts that the Court failed to properly instruct the jury, erroneously limited his ability to adduce evidence and testimony at his trial, and improperly disregarded his status as a *pro se* litigant in custody; that a juror committed misconduct; that the jury was not composed of his peers; and that newly discovered evidence establishes that the Government extracted data from his cell phone and failed to disclose that data to him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Filing 172 at 1–2; Filing 175 at 1–2; Filing 177 at 1–2. The Court addresses each point raised by Spellman and concludes that none of them warrant a new trial.

#### 1.   *Failure to Properly Instruct the Jury*

Spellman contends that the Court failed to properly instruct the jury, specifically citing Federal Rule of Criminal Procedure 31(b)(2), which states that "[i]f a jury cannot agree on all counts as to any defendant, the jury may return a verdict on those counts on which it has agreed." Fed. R. Crim. P. 31(b)(2). He further states that the Court "inverted the suggested Eighth Circuit Model Jury Instruction" and "failed to answer the question of the jury and instead gave the jury a second answer to a question previously asked and answered." Filing 172 at 1. Although Spellman does not explicitly state which instruction he contends was erroneous, the Court assumes he is

referring to the Court's response to the jury's third question, which instructed the jury on the term "knowingly" and gave an *Allen* charge.

A district court "has wide discretion in formulating appropriate jury instructions." *United States v. Williams*, 39 F.4th 1034, 1046 (8th Cir. 2022) (quoting *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011)). A court errs when it gives an instruction that misstates the law. *United States v. Bolman*, 956 F.3d 583, 587 (8th Cir. 2020) (citing *United States v. Fast Horse*, 747 F.3d 1040, 1042 (8th Cir. 2014)). "However, '[j]ury instructions are adequate if, taken as a whole, [they] adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government.'" *Williams*, 39 F.4th at 1046 (alterations in original) (quoting *Fast Horse*, 747 F.3d at 1042). Improper instructions will justify reversing a jury verdict "when the errors misled the jury or had a probable effect on the jury's verdict." *United States v. Lopez*, 880 F.3d 974, 981 (8th Cir. 2018) (quoting *United States v. Pereyra–Gabino*, 563 F.3d 322, 328 (8th Cir. 2009)).

The Court's instructions were proper. The instructions accurately stated the elements of the charges against Spellman and the Government's burden of proof. In listing these elements and the burden of proof, the Court relied upon the most recent version of the Eighth Circuit's model instructions. *See United States v. Hansen*, 791 F.3d 863, 872 (8th Cir. 2015) (noting, while holding that a court properly instructed the jury, that the instruction on the elements followed the Eighth Circuit's model instructions). Thus, the jury was instructed correctly on the showing required to convict Spellman of the charged offenses.

Turning more specifically to the Court's response to the jury's third question—against which it appears Spellman makes his argument—nothing in the Court's response was erroneous. In its third question, the jury explained that it had reached a verdict on Count I—the drug-

distribution charge—but had "possibly come to a standstill on Counts II and III (regarding the term 'knowingly')." The jury inquired "[w]hat do we do now?" Filing 161 at 1. The jury had previously implied that it had confusion over the term "knowingly" in their second question, which asked if the law dictated that a person "knowingly 'possess[es]'" all items in a vehicle. Filing 159 at 1. In response to the jury's third question, the Court gave the following instruction:

> The government is not required to prove that the defendant knew that his acts or omissions were unlawful. An act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

Filing 161 at 1–2. The Court also read an *Allen* charge. Filing 161 at 2.

There is nothing improper with the Court's response. The jury had indicated a dispute over the term "knowingly"—a term that was at issue in the jury's prior question—and the Court provided a further instruction on what it means to act knowingly. *See United States v. Jenkins*, 792 F.3d 931, 935 (8th Cir. 2015) ("A district court has broad discretion to respond to a jury request for supplemental instructions. It must [e]nsure that any supplemental instructions given are accurate, clear, neutral and non-prejudicial." (quoting *United States v. Felici*, 54 F.3d 504, 507 (8th Cir.1995)). The Court's explanation of the term knowingly was based off the Eighth Circuit's model jury instruction's recommendation in the committee comments to model instruction 7.03, *see* Eighth Circuit Manual of Model Jury Instructions (Criminal) 7.03, committee comments (2021), which the committee acquired from the instruction approved of in *United States v. Dokter*, 58 F.3d 1284, 1288 (8th Cir. 1995). Moreover, the Eighth Circuit has repeatedly stated that for one to act "knowingly," he or she must be "aware of the act and . . . not act through ignorance, mistake, or accident," *United States v. Salther*, 955 F.3d 666, 668 (8th Cir. 2020) (alteration in original) (quoting *United States v. Holy Bull*, 613 F.3d 871, 874 (8th Cir. 2010)), which is precisely how

the Court instructed the jury. *See* Filing 161 at 2. It was also correct to instruct the jury that it could

consider Spellman's words, acts, or omissions, along with all the other evidence, in deciding

whether Spellman acted knowingly. *See United States v. Frommelt*, 971 F.3d 823, 829 (8th Cir.

2020) ("Generally, a defendant's knowledge is 'established through circumstantial evidence . . . ."

(quoting *United States v. Mallett*, 751 F.3d 907, 915 (8th Cir. 2014)); *see also United States v.*

*Benitez*, 531 F.3d 711, 716–17 (8th Cir. 2008) (considering the defendant's statements to law

enforcement officers in evaluating whether sufficient evidence showed that he was aware of the

drugs hidden in his vehicle). Indeed, much of the Court's response was already included in the

original instructions. *See* Filing 165 at 23 (stating that, in considering the defendant's knowledge,

the jury could "consider any statements made and acts done by the defendant, and all the facts and

circumstances in evidence which may aid in a determination of the defendant's knowledge");

*Jenkins*, 792 F.3d at 935 (concluding that a supplemental instruction was non-prejudicial because

"[i]t repeated information the jury had already been told"). The Court's response was a neutral

answer to the jury's question that gave no indication of what the jury's verdict should be. Thus,

the Court's response to the jury's question was accurate, clear, neutral, and non-prejudicial. *See*

*id.*

Finally, as to the Court reading an *Allen* charge after the jurors stated that they had

"possibly come to a standstill," the Court's charge did not coerce the jury into finding Spellman

guilty. *See United States v. Thomas*, 791 F.3d 889, 898 (8th Cir. 2015) (noting that an *Allen* charge

is permissible when it is not coercive). "An *Allen* charge is a supplemental jury instruction that

advises deadlocked jurors to reconsider their positions." *Jackson v. United States*, 956 F.3d 1001,

1008 (8th Cir. 2020) (quoting *United States v. Ybarra*, 580 F.3d 735, 738 (8th Cir. 2009)). The

coercive effect of "jury coercion [from an *Allen* charge] is determined by (1) the content of the

instruction, (2) the length of the deliberation after the instruction, (3) the total length of deliberations, and (4) any indicia in the record of coercion." *Id.* (quoting *United States v. Walrath*, 324 F.3d 966, 970 (8th Cir. 2003)).

The Court's *Allen* charge tracked the language of the *Allen* charge found in the Eighth Circuit's model instructions. *See* Eighth Circuit Manual of Model Jury Instructions (Criminal) 10.02 (2021); *see also Ybarra*, 580 F.3d at 737–38 (approving the model instruction's *Allen* charge). The jury deliberated approximately six hours, one-and-a-half hours of which occurred after the Court gave the *Allen* charge. *See Thomas*, 791 F.3d at 898 (holding that *Allen* charge was not coercive when the jury deliberated "roughly eight hours: six hours prior to the *Allen* charge and an additional two hours after the instruction"). No indicia of coercion appears in the record. Therefore, the Court's *Allen* charge was proper.

In sum, the Court rejects Spellman's contention that the Court failed to properly instruct the jury.

### 2. *Limiting Spellman's Ability to Adduce Evidence and Testimony*

Spellman also argues that the Court erroneously limited his ability to adduce evidence and testimony at trial. Specifically, Spellman takes issue with the following decisions by the Court: (1) that the Court "unreasonably quashed subpoenas which [were] expected to provide exculpatory evidence;" (2) that "[t]he Court would not allow [Spellman] to impeach witnesses who transparently made inconsistent statements about important facts;" (3) that "[t]he Court would not allow new evidence [from body-worn cameras] to be introduced;" and (4) that the Court prevented Spellman from questioning witnesses about being able to run a plate through the Nebraska Criminal Justice Information System (NCJIS). Filing 172 at 1–2. The Court is not persuaded by Spellman's arguments.

a.   Subpoenas

The Court begins with Spellman's contention that the Court "unreasonably quashed subpoenas." Spellman filed an *ex parte* motion for a subpoena on September 20, 2022, for documents from a cellphone company related to Spellman's location on March 8 and 9 of 2021. Filing 96; Filing 97 at 1. He then filed five more motions for subpoenas on September 26, 2022— the day before trial—and one motion and seven amended motions for subpoenas the next day during trial. *See, e.g.*, Filing 113; Filing 128. While the motions for subpoenas requested several documents from a variety of entities, none explained how the documents were relevant or admissible. In total, Spellman made 14 requests for subpoenas, mostly seeking documents produced long ago during discovery, right before trial.

Magistrate Judge Bazis granted these motions in several orders. Filing 103; Filing 124; Filing 127; Filing 144. During trial, the Court reviewed these subpoenas and asked the Government if any of the requested documents had already been provided to Spellman during discovery. Other documents illustrated a continued desire to relitigate the motion to suppress issues, rather than the guilt or innocence of Spellman on the charges being tried.

The Court also questioned an assistant U.S. Marshal regarding the subpoenas out of the hearing of the jury, and the U.S. Marshals' office noted that it simply was not possible to serve the requested subpoenas in the timeframe requested given that the trial was already started. The Court then quashed the subpoenas for documents that Spellman had already received from the Government and quashed others that did not request documents that were relevant or admissible. Further, during the trial, Spellman stated on the record that he did not wish to delay the trial even though the documents he sought by subpoena would not be delivered in time to be used at trial.

Under Federal Rule of Criminal Procedure 17(c)(1), a party may request the issuance of a subpoena to "order the witness to produce any books, papers, documents, data, or other objects." Fed. R. Crim P. 17(c)(1). Rule 17 does not provide a means of discovery in a criminal case, regardless of if the subpoena is directed at the Government or third parties. *See United States v. Stevenson*, 727 F.3d 826, 831 (8th Cir. 2013). Instead, Rule 17's purpose is "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Bueno*, 443 F.3d 1017, 1026 (8th Cir. 2006) (citing *United States v. Nixon*, 418 U.S. 683, 698–99 (1974)).

The party requesting a subpoena "must identify the documents with adequate specificity and show that the documents are relevant and admissible." *United States v. Bradford*, 806 F.3d 1151, 1155 (8th Cir. 2015). "The relevance and specificity elements require more than the title of a document and conjecture as to its contents, and a subpoena should not issue based upon a party's mere hope that it will turn up favorable evidence." *Id.* (internal quotation marks omitted) (quoting *Stevenson*, 727 F.3d at 831). Courts in this circuit have also considered "whether failure to obtain the documents may tend to unreasonably delay the trial, and whether the materials are requested in good faith." *United States v. DNRB, Inc.*, 257 F. Supp. 3d 1033, 1036 (W.D. Mo. 2017).

The Court properly quashed some of these subpoenas *sua sponte*.[2] Upon inquiry at trial and on the record with the prosecution, the Court determined that some subpoenas had already been issued in a form such that the sought documents had been produced to Spellman's previous counsel long ago. Given the documents were already requested and produced, the Court found cause to quash those subpoenas. Indeed, upon review of the record, the Court believes it only

---

[2] Although Federal Rule of Criminal Procedure 17(c)(2) states that "[o]n motion made promptly" the Court may quash a subpoena, the Court has the inherent power to *sua sponte* revisit prior orders, *see K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007), which would include the power to revisit Magistrate Judge Bazis's prior orders granting Spellman's motions for subpoenas.

quashed subpoenas after determining that the documents at issue had already been requested with an appropriate response provided to Spellman's previous counsel.

Further, none of the subpoena motions seeking the subpoenas explained how the requested documents were relevant or admissible. Rather, they only vaguely stated that the requested documents were "necessary for [Spellman] to properly prepare for trial." *See, e.g.*, Filing 133 at 1; Filing 139 at 1. This meager showing of relevancy and admissibility is far from sufficient. *Cf. United States v. Mabie*, 663 F.3d 322, 330 (8th Cir. 2011) (holding that the district court properly refused to issue subpoenas for witnesses when the defendant "did not establish how [the witnesses'] testimony would have affected the outcome of his case"); *United States v. Blade*, 336 F.3d 754, 758 (8th Cir. 2003) (holding that subpoena motions that only stated "that the requested witnesses would give relevant testimony" did not satisfy the requirements under Rule 17). As far as the Court could tell, all the subpoenas were directed at information regarding how law enforcement officers identified the silver jeep on March 8, 2021. *See, e.g.*, Filing 132 at 1 (seeking license plate numbers run through NCJIS by law enforcement officers on March 8, 2021). Such information would, at best, pertain to the merits of Spellman's Motion to Suppress, rather than if he knowingly possessed with intent to distribute narcotics and knowingly possessed a firearm. *See United States v. LeBeau*, 867 F.3d 960, 976 (8th Cir. 2017) (noting that the testimony sought by the subpoenas quashed by the district court, which went to whether law enforcement officers unscrupulously gained access to a hotel room or car, would not "make it more or less likely that [the defendant was] guilty of the crimes of which he was convicted"). Therefore, because Spellman failed to satisfy the relevancy and admissibility requirements for issuance of a subpoena under Rule 17, the Court properly quashed them.

Finally, the Court found it a burden and unnecessary to ask the U.S. Marshals Service to spend a large amount of time serving subpoenas involving documents that 1) had already been previously responded to in discovery, 2) requested documentation unlikely to be admitted at trial, and/or 3) would likely not be responded to at all in time to be potentially  used at trial given the trial was already under way. The Court also stated on the record that the Marshals Service informed the Court that it did not believe it could complete the entire task within the timeframe created by Spellman's late filings anyway.

In sum, the Court quashing some of Spellman's subpoenas does not warrant a new trial.

### b.   Presenting Evidence and Examining Witnesses

The Court next considers Spellman's arguments that the Court's limitations on the evidence Spellman could present and the questions he could ask witnesses violated his due-process rights. Without much elaboration, Spellman contends that the Court improperly prevented Spellman from impeaching witnesses who made inconsistent statements about material facts; refused to allow Spellman to introduce body-worn camera footage; and would not allow Spellman to question witnesses about running plates through NCJIS. Spellman does not explain, however, the relevancy of any of the testimony he wanted to elicit or any of the evidence he wished to introduce.

While criminal defendants must be provided "a meaningful opportunity to present a complete defense," *United States v. Wilkens*, 742 F.3d 354, 364 (8th Cir. 2014), a district court has wide latitude to determine how evidence is to be presented and to impose reasonable limits on cross-examining witnesses. *See United States v. Steinmetz*, 900 F.3d 595, 601 (8th Cir. 2018); *Parkhurst v. Belt*, 567 F.3d 995, 1002 (8th Cir. 2009). The presiding judge "may properly limit cross-examination on inherently speculative theories of bias." *United States v. Williams*, 796 F.3d

14

951, 961 (8th Cir. 2015) (quoting *United States v. Martinez–Vives*, 475 F.3d 48, 53–54 (1st Cir. 2007)). Moreover, "[t]rial courts may exclude defense evidence on grounds the evidence is 'repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues' without violating the Constitution." *Wilkens*, 742 F.3d at 364 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)). If introduction of the evidence risks creating a "sideshow at trial" by "drawing attention away" from the issues in the case, a court may prevent its admission. *See Trotter v. Lawson*, 997 F.3d 819, 822 (8th Cir. 2021). Even if the evidence bears some relevancy to an issue at trial, "[c]onfusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues." *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995). As the Eighth Circuit has explained, "[A] trial judge . . . is more than a mere moderator or arbiter [and] has the obligation . . . to preside and conduct a fair and impartial trial, to rule out improper questions, and protect witnesses." *United States v. Henderson*, 613 F.3d 1177, 1184 (8th Cir. 2010) (quoting *Skogen v. Dow Chem. Co.*, 375 F.2d 692, 703 (8th Cir. 1967)).

None of Spellman's complaints show any impropriety by the Court in how it managed trial. Spellman's contention that the Court did not allow him to impeach witnesses is spurious. Indeed, the Court gave Spellman exceptional leeway in cross-examining witnesses. Clearly, Spellman wanted to cross-examine the Government's witnesses about how they identified the jeep on March 8, 2021. But Spellman's speculative theory of bias on the part of the officers who identified the jeep did not entitle him to go through every minute detail of the shots-fired incident with these officers in the mere hope of discovering that the traffic stop was pretextual. *See Williams*, 796 F.3d at 961 ("[A] district court may impose reasonable limits on cross-examination based on concerns about prejudice or confusion of the issues." (quoting *United States v. Sigillito*, 759 F.3d 913, 938

(8th Cir. 2014)). The reasons for officers initiating the traffic stop had nothing to do with the issues at trial. *See Trotter*, 997 F.3d at 822 (holding that a court may prevent the introduction of evidence that would "draw[] attention away" from the issues in the case). Spellman is guaranteed "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, [Spellman] might wish." *Sittner v. Bowersox*, 969 F.3d 846, 850 (8th Cir. 2020) (emphasis in original) (quoting *United States v. Jasso*, 701 F.3d 314, 316 (8th Cir. 2012)).

As to Spellman's issue with the Court preventing him from asking witnesses about running plates through NCJIS, Spellman fails to explain how this topic was relevant to whether he is guilty of the charged offenses. *See United States v. Delorme*, 964 F.3d 678, 682 (8th Cir. 2020) ("[D]istrict courts have 'wide latitude to exclude evidence as irrelevant and speculative.'" (quoting *Wilkens*, 742 F.3d at 364)). Spellman also fails to demonstrate that the body-cam footage he wanted to introduce was relevant to an issue at trial. *See Jackson*, 651 F.3d 923, 926 (8th Cir. 2011) (stating that the right to present a defense "does not extend to the introduction of irrelevant evidence"). Because Spellman was attempting to cross-examine officers on a speculative theory that they invented a reason to pull over the jeep, and he has not explained the relevancy of the evidence he sought to introduce at trial, the Court acted properly in limiting cross-examination and excluding evidence.

### 3. Alleged Juror Misconduct

Spellman's Motion for a New Trial asserts that a juror "violated jury instructions" not to "separate during deliberation and to not use [a] cellphone during this time." Filing 172. The Court previously dealt with this issue in a sealed order sent to the parties. *See* Filing 169. In brief, an individual who came to the courthouse during deliberations claimed that he saw a juror on his cell

phone in the courthouse after the Court submitted the case to the jury. The Court reviewed security footage of the time in question, which demonstrated that the jurors were on break during the time the individual saw the juror on his cell phone. Because jurors are allowed to look at their cell phones while on break, the Court did not investigate further. *See United States v. Harris-Thompson*, 751 F.3d 590, 596 (8th Cir. 2014) ("[T]he depth of investigation required depends on both the gravity of the alleged misconduct and the substantiality of the . . . showing of misconduct." (alterations in original) (quoting United States v. Tucker, 137 F.3d 1016, 1031 (8th Cir. 1998))).

Nothing in Spellman's Motion convinces the Court to alter its conclusion. Jurors are not forced to stay in the jury room and may take breaks when needed. A juror using his cellphone does not establish misconduct because jurors are presumed to follow the Court's instructions about contacting others about the case. *See United States v. Patterson*, 684 F.3d 794, 799 (8th Cir. 2012) ("Jurors are presumed to follow the court's instructions."). Because Spellman makes only "speculative and unsubstantiated allegations" of juror misconduct, the fact that a juror was using his cellphone while the jury was on break does not warrant a new trial. *See United States v. Muhammad*, 819 F.3d 1056, 1063 (8th Cir. 2016).

### 4. *Jury Composition*

Spellman contends that the fact that the jury was not composed of any members of his ethnicity violated his Sixth Amendment Rights under the United States Constitution. This contention is without merit. Given that there were no members of the jury panel of Spellman's ethnicity—a fact Spellman pointed out during *voir dire*—the Court assumes he is not making a belated *Batson* challenge. *See Batson v. Kentucky*, 476 U.S. 79, 84 (1986) (holding that the purposeful or deliberate exclusion of African American jurors violates the Equal Protection Clause). Rather, it appears Spellman takes issue with the fact that there were no African Americans

on the jury panel. However, "[t]he Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process." *United States v. Jefferson*, 725 F.3d 829, 835 (8th Cir. 2013). Spellman has presented no evidence that there has been "systematic exclusion" of African Americans from the jury-selection process in this district, and, therefore, the mere fact that there were no African Americans on the jury panel does not warrant a new trial. *See United States v. Tripp*, 370 F. App'x. 753, 759–60 (8th Cir. 2010) ("Absent . . . evidence [of systematic exclusion], [the defendant] cannot make a showing of a constitutional violation.").

### 5. Administration of Trial and Other Complaints

Spellman launches a litany of grievances directed at the undersigned judge's administration of the trial. These include that the Court insisted on holding Spellman to the standards of a licensed attorney despite Spellman being in custody; that the Court did not require Spellman's jail to give him more time in the jail's law library; and that the Court made comments to Spellman in an intimidating tone about how Spellman was litigating his case. Filing 172 at 1–2. The Court is not persuaded that any of these complaints warrant a new trial.

First, while Spellman protests that the Court held him to the standards of a licensed attorney, the law does not mandate otherwise. *See United States v. Hill*, 31 F.4th 1076, 1081 (8th Cir. 2022) ("Pro se litigants are not excused from compliance with substantive and procedural law . . . ." (quoting *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986))); *United States v. Luscombe*, 950 F.3d 1021, 1029 (8th Cir. 2020) ("[T]he right of self-representation is not . . . a license not to comply with relevant rules of procedural and substantive law." (quoting *Mabie*, 663 F.3d at 328)); *United States v. Smith*, 830 F.3d 803, 810 (8th Cir. 2016) ("In exercising [the] right [of self-

representation], the defendant may be required to 'follow all the "ground rules" of trial procedure.'" (quoting *Faretta*, 422 U.S. 806, 836 (1975))). Undeniably, Spellman's decision to represent himself was inherently risky. *See Finch v. Payne*, 983 F.3d 973, 982 (8th Cir. 2020) ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." (quoting *Faretta*, 422 U.S. at 835)); But the Court was under no obligation to save Spellman from the consequences of his choice. *See Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("A pro se litigant should receive meaningful notice of what is expected of him, but the court is not permitted to act as counsel for either party." (quoting *Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir.1983))). At the *Faretta* hearing, Spellman made an intelligent, knowing, and voluntary waiver of his right to trial counsel after the Court warned Spellman "of the dangers and disadvantages of self-representation." *Fiorito v. United States*, 821 F.3d 999, 1003 (8th Cir. 2016) (quoting *Bilauski v. Steele*, 754 F.3d 519, 522 (8th Cir. 2014)). Moreover, the Court provided Spellman with standby counsel to assist him. Thus, even if the Court required him to abide by applicable rules and procedure, this does not warrant a new trial.

Furthermore, Spellman's contention that he is owed a new trial because the Court did not grant him adequate time in his jail's law library is equally without merit. As an initial matter, Spellman did not raise his dissatisfaction with the jail's law library until trial, upon which the Court asked Spellman's jail to give him more time to perform legal research. After the Court made this request, Spellman stated that the jail did extend the time he was allowed in the law library. More fundamentally, however, a *pro se* defendant has "a right of access to adequate law libraries *or adequate assistance from persons trained in law*." *United States v. Olivares*, 843 F.3d 752, 758 (8th Cir. 2016) (emphasis added) (quoting *United States v. Kind*, 194 F.3d 900, 905 (8th Cir.

1999))). In this case, the Court provided Spellman with standby counsel around two weeks prior to trial. *See United States v. Knox*, 950 F.2d 516, 519–20 (8th Cir. 1991) (noting, while rejecting the *pro se* defendant's claim that his due-process rights were violated from inadequate library time, that the district court provided the defendant with standby counsel). Furthermore, while Spellman complains that he did not have enough time to perform legal research, he does not explain what he wanted to research or why additional research would have changed the outcome of his trial. *See Olivares*, 843 F.3d at 758 (stating that the defendant "must 'demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim.'" (alteration in original) (quoting *Kind*, 194 F.3d at 905)). Indeed, the record shows that Spellman ably represented himself despite these alleged limitations. He made several meritorious objections, conducted capable cross-examinations, made arguments directed at the elements of his offenses, and even successfully persuaded the Court to modify the jury instructions. By providing Spellman standby counsel well in advance of trial, and obtaining more library time for Spellman, the Court protected Spellman's right to a fair trial.[3]

Finally, although the undersigned judge acknowledges he felt the need to provide Spellman some stern lectures outside the hearing of the jury in order to keep order in the proceeding, such so-called "diatribe[s]" were respectful, direct, and frankly necessary to complete the proceeding

---

[3] Spellman also contends that the Court did not allow Spellman to see "original copies of photos or other documents" and cites Federal Rules of Evidence 1001 and 1002. Filing 172 at 2. Despite Spellman's paradoxical reference to "original copies," the Court understands this argument to mean that the Court erred by not ordering the Government to turn over the originals of certain documents that were introduced at trial. However, there was nothing improper about the Government using duplicates at trial and turning over duplicates to Spellman during discovery. As Federal Rule of Evidence 1003 makes clear, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. There was never any serious dispute made about the authenticity of the Government's evidence. In fact, although Spellman protested that the Government was using printouts of documents stored electronically, these printouts are considered originals under the Federal Rules of Evidence. *See* Fed. R. Evid. 1001(d) ("For electronically stored information, 'original' means any printout--or other output readable by sight--if it accurately reflects the information.").

with some semblance of order. Indeed, the Court believes these were rather restrained given the circumstances. Therefore, none of Spellman's issues with how the Court handled trial warrant a new trial.

### 6. *Cell Phone Evidence*

Finally, the Court turns to Spellman's argument that the Government tampered with his cellphone and withheld allegedly exculpatory information that the Government extracted from that cellphone. Filing 175 at 1–2; Filing 177 at 1–2. As represented in the Government's brief opposing Spellman's Motion, the Government turned over Spellman's phone to his former counsel in December of 2021 at Spellman's request. Filing 178 at 3. According to Spellman, his former counsel was unable to extract data from this phone. Filing 175 at 2. Spellman represents in his addendum to his Motion that one of his family members received this phone on October 11, 2022. Filing 175 at 1.

As Spellman outlines in his addendum to his Motion, that family member reactivated this phone and discovered that she could not make outgoing calls and that incoming calls went straight to voicemail. Filing 175 at 2. Spellman first states that this means the SIM card has been removed from his phone and replaced with an incompatible SIM card. Filing 175 at 2. Later, in his supplement to his Motion, Spellman asserts that not only has the SIM card been switched, but the entire "phone device" has been switched. Filing 177 at 1. In support of this assertion, Spellman explains that his family member discovered that the phone she received contains no call or message history. Filing 177 at 1. Spellman further states that his family member spoke to the phone's service provider, who stated that the phone number Spellman had on March 8, 2021, is connected to a phone with a different international mobile equipment identity (IMEI) number than the phone in his family member's possession. Filing 177 at 1–2. Spellman reasons that because the phone does

not contain call or message history, and because the phone number Spellman had on March 8, 2021, is connected to a phone with a different IMEI number, the phone turned over by the Government is not the phone seized from him during the March 9, 2021, traffic stop. Filing 177 at 2. He asserts that this shows the Government took data from his phone, including the phone's GPS location, which would exculpate him from the shots-fired incident on March 8, 2021, and then, for unknown reasons, gave his former counsel an entirely different phone that coincidentally had his phone number on it. Filing 175 at 2.

The Government responds that after it gave Spellman's cellphone to Spellman's former counsel in December of 2021, it never received any reciprocal discovery from Spellman's former counsel concerning data extraction. Filing 178 at 3–4. The Government states that it never sought to obtain information from the cellphone or use it at trial. Filing 178 at 3–4. According to the Government, Spellman is attempting to relitigate his suppression hearing, just as he attempted to do at trial. Filing 178 at 4.

"The district court may grant a new trial based on newly discovered evidence 'if the interest of justice so requires.'" *Glinn*, 965 F.3d at 942 (quoting Fed. R. Crim. P. 33(a)).

> The movant must show "(1) the evidence is in fact newly discovered since trial; (2) diligence on his part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) it is probable that the new evidence would produce an acquittal at the new trial."

*United States v. Lewis*, 976 F.3d 787, 795 (8th Cir. 2020) (quoting *Shumaker*, 866 F.3d at 961). "The district court has 'broad discretion in deciding whether to hold an evidentiary hearing on a motion for a new trial based on newly discovered evidence.'" *Glinn*, 965 F.3d at 942 (*United States v. LaFuente*, 991 F.2d 1406, 1409 (8th Cir. 1993)).

Spellman's supposed revelations about his cellphone are not evidence of anything relevant to his guilt of the charged offenses relevant to his case, much less newly discovered evidence

warranting a new trial. The Court will not make the logical leap with Spellman that because his phone number no longer works the Government must have, for inexplicable reasons, given him a different phone to hide exculpatory information.[4] At most, Spellman could have used the information contained in the addendum and supplement to his Motion to impeach law enforcement officers about his cellphone, assuming the Court would have allowed such questions. However, "evidence that merely impeaches is not material." *Erickson*, 999 F.3d at 631. This information about the cell phone was also not material to any issue at trial because the reasons for officers stopping the silver jeep had nothing to do with whether Spellman knowingly possessed narcotics with the intent to distribute them and whether he knowingly possessed a firearm. Given the overwhelming evidence of Spellman's guilt, there is no possibility Spellman's accusations about his cell phone would "produce an acquittal at [a] new trial." *Lewis*, 976 F.3d at 795.

Finally, the information about the cellphone does not show a violation of *Brady v. Maryland* because Spellman has failed to show that the Government withheld any evidence from him, much less that it was favorable to his defense or material to his guilt. *See United States v. Corey*, 36 F.4th 819, 822–23 (8th Cir. 2022) ("Prosecutors commit a *Brady* violation when they withhold evidence from the defense that is (1) favorable to the accused and (2) material either to guilt or to punishment."). Spellman utterly fails to demonstrate that there is any evidence in the Government's possession that was not either turned over to him or his former counsel. Similarly, Spellman also fails to show that the information about the cellphone demonstrates the "knowing use of perjured testimony" that would require setting aside his conviction. *See id.* at 822. There is absolutely nothing that even remotely implies that Government witnesses lied on the stand or that the Government knowingly used perjured testimony. *See id.* (outlining that, to obtain an acquittal

---

[4] Indeed, given Spellman likely did not have access to his cell phone for over a year and a half, it would seem rather logical that the number was assigned to someone else.

23

based on the knowing use of perjured testimony, "a defendant must establish '(1) the testimony was in fact perjured and (2) the prosecuting officers knew, or should have known, of the perjury at the time the testimony was presented.'" (quoting *United States v. Duke*, 50 F.3d 571, 577–78 (8th Cir. 1995))). Thus, Spellman's newly discovered "evidence" does not entitle him to a new trial.

## IV.   CONCLUSION

Although Spellman may believe otherwise, he was afforded a fair trial in front of an impartial jury. There was no conspiracy to illegally pull over the jeep he was driving, and the current inoperability of his cellphone is not evidence otherwise. Accordingly,

IT IS ORDERED that Spellman's Motion for a New Trial, Filing 171, is denied.

Dated this 15th day of November, 2022.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge